Good morning, everyone. We're going to call the first case, which will be done by a video conference as a result of a motion that was made by the parties, and that's the case of Brownowicz v. Allegheny County Probation Officer Karen Olitz, if we've seen that at all. And we'll recognize Mr. Ociani. Mr. Ociani? Thank you, your honor, and may it please the court. I am Robert Ociani, counsel for appellant Raymond Brownowicz. Initially, I'd like to thank the court for this scheduling adjustment because of a conflict that arose here with another case I have in Pittsburgh. Your honors, this case really presents a most fundamental question for our legal system. Mr. Ociani, are you requesting some time for rebuttal? Oh, yes, your honor, I'm sorry. I'm requesting five minutes for rebuttal. That request will be granted. Thank you. This case presents really a very fundamental question to the American legal system. Does a citizen, even one who has a criminal record, who was admittedly wrongfully incarcerated for 16 months, have any redress against those governmental officials who improperly caused him to lose his liberty? Can I ask you a question? Yes, your honor. Because you talk about the officials, I would like to get one thing out of the way pretty quickly. You make an issue, it seems you make an issue, of whether the probation officers are county employees or state employees. And of course, your colleagues on the opposite side of the case here assert that that is a matter of subtle law. There's not some factual issue associated with it. in our circuit that says plainly that probation is part of the arms of the court, the courts are an independent branch within the commonwealth's government, and therefore, no dispute, they are commonwealth employees. What, if anything, is an error in the reasoning they put forth? Well, I don't think it's subtle law, your honor, because there's another case that this court has dealt with, and it was cited by the appellee several times. Barr v. Clarion County, which also arose here in the Western District of Pennsylvania before Judge Fischer, Judge Nora Fischer. That case, unlike this one, proceeded to the summary judgment stage. This case was dismissed on a motion to dismiss. And in that case, the Clarion County Office of Probation was sued. A probation officer was sued. What kind of case was it? It was a case where an individual who had been sentenced was challenging an amendment to his sentence. It was really an amendment because of a transcription error, and that transcription error had been pointed out by his probation officer. I want you to respond, if you would, to this language from Haybarger. We have held that Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity. As an arm of the state, an individual judicial district and its probation and parole department are entitled to Eleventh Amendment immunity. Now, that's pretty emphatic. What are you pointing to in the language of this Barr case that undercuts that? The fact that the Eleventh Amendment is not mentioned one time in the Barr case, either at the trial court level or the appellate court level. No Eleventh Amendment immunity was raised. When was that Barr case decided? The site is in the Applebee's brief. It's a 2008 case, I believe. No, it's 2011, Barr v. County of Clarion, 417 Fed Appendix 178. You can't really give us a non-precedential opinion and try to assert that it somehow overrules a previous precedential opinion, can you? I mean, Haybarger's a precedential opinion. Your Honor, I'm not suggesting, Judge Jordan, that it overrules the Haybarger opinion. I'll speak to Haybarger in a minute, but what it does do is show that there's some kind of a pick-and-choose going on here. There's another case that was filed in Allegheny County that did not make it to the Third Circuit, Spiker v. Allegheny County Probation Department. The Eleventh Amendment wasn't raised in that case, either. So, my concern is almost a Fourteenth Amendment concern of equal protection. In some cases, the probation officers are allowed to be sued, and the case proceeds through discovery, and in other cases, they aren't. Let me make sure I understand your argument here. Your argument is, because at times the Commonwealth exercises the good judgment to assert an immunity it has, and at other times, perhaps it doesn't, that that means that the Amendment immunity evaporates for them? Because you've twice said these other cases are silent on the question of Eleventh Amendment immunity. I'm reading your language from Haybarger, which is explicit, and I don't want to take your whole ten minutes on this, but I'm wondering why you're pressing this point when we've got language which seems pretty clear on it. Well, because in this case, this Eleventh Amendment immunity and the entry of appearance of Ms. Leibenguth didn't take place until, I believe, we were nearly a year into the case. Is Eleventh Amendment immunity waivable? Absolutely it's waivable, and I would argue that not only was it waived in this case, and I've so argued in my brief, but that this seriatim use of Eleventh Amendment immunity by the Commonwealth also could constitute a waiver. Do you have a case for that proposition? No, I don't. No, I don't. I think these are very unusual circumstances in which supposed county officers who are paid by the county and who are hired and fired by the county somehow become closed with this state immunity under the Eleventh Amendment. In fact, I originally intended to raise some of the issues that Justice Souter in the Seminole Tribe case raised back in 1996 with four justices. This whole jurisprudence that has arisen under the Eleventh Amendment is just way off base given what the Eleventh Amendment says. Nevertheless... Mr. Rossiani, you don't want to take all your time on this, but let me ask you a Heck v. Humphrey question. Yes, Your Honor. As to what actually took place, what took place when the case got back in the Superior Court? First of all, the Superior Court merely vacated the sentence, correct? That's correct, Judge Fisher. Now, when it got back in front of Judge Mackin, what did Judge Mackin do? He released Mr. Bronowitz. On parole? Because... Didn't he use the words on parole? But he was not on any further probation. That was his terminology for he's paroled forthwith, that is he is released. No one's argued that there was any further probation or he was under any further sentence. And what I'd like to point out to the Court is the Rosetta Stone on these charges and the mix-up of the counts and everything else is found in the Commonwealth's brief that they filed with the Superior Court, appendix pages 329 to 333, where they point out that all of these charges had been fulfilled by June of 2010. And the suggestion that the only reason Mr. Bronowitz was released is because under some calculation his DUI charge would have expired before the Superior Court could finish the process and give a decision is ludicrous because the original DUI charge in 2001 was over the maximum from the beginning. He was sentenced to 90 to 180 days plus five years probation, which is more than the five-year term. Also... This is only going to work if you stop, if you hear us break in. I know that the technology may make that a little difficult, but... I'm sorry. That's all right. Even accepting that your version of how things procedurally occurred is accurate, how can you make a claim as to the first period of incarceration? And let me explain my terms. When I say first period, I mean the one that starts in July 2010, the second one being the January 2011. As to that first one, the folks on the other side say, you never filed any appeal at all. You never did anything to challenge it. And therefore, that can't possibly be the subject of 1983 relief. Have they got a point there? No, I don't think so, and the reason is this. At that time, Judge Mackin concluded all interest in the DUI sentence. Then he tried to say that probation was continued at count four, forthwith. Well, that probation ended back in 2006. So at that point, there was no further probation on Mr. Braun. There was no reason to appeal. That isn't the question, not whether that's right or wrong, but whether there isn't something you needed to do to make that happen. I want to read something from your own brief. This is page 32 of the opening brief. You say there has been a great injustice done in this case. A citizen has been incarcerated for almost a year and a half in admitted contravention of the federal constitution, etc. When I read that, I thought he's focused on that 15-month period, which is the second period of incarceration, and that's the one that seems to be the real focus of the argument here, where he apparently is acknowledging that there wasn't much that could be done beyond what he did in appealing to the Superior Court there. But I'm still lost as to how you get past the heck-favorable termination bar as to the first period of incarceration, where there was no challenge at all. The appellees definitely have a point there. The only thing I can say is that Probation Officer Seema, when he reported for probation, told him, no, you don't have to report, you're not on probation anymore, and there might be some tolling with substantial limitations or something that could be argued there. But I just want to take an additional minute off of my rebuttal, if I may, to say with respect to the Superior Court order, that court did what unfortunately courts tend to do. Maybe it's not unfortunate, maybe it's judicial economy. They were faced with an appellate, Mr. Bronowitz, and an appellee of the Commonwealth in the District Attorney's Office, Mr. Zappala, which said, you know what, the appellee's right, this guy should be released, and they say several times in their brief that all of the probations had expired by the time of Judge Macken's July 20, 2010 hearing, and certainly by the time of the July 19, 2011 hearing. So the Superior Court didn't reach the issues that were raised, the constitutional issues and the procedural issues, that Superior Court and Pell and Bronowitz raised, because they saw no need to. The Commonwealth agreed that he should be released. What else was he to do? What was he supposed to do? Judge Greenaway has a question. You're not suggesting that that revives the claim for the first period of incarceration, are you? No, no, I'm not. I'm focusing, we're certainly focused on the 16 months that began in January of 2011, when he was sentenced to this purported plea agreement that he never agreed to. But, you know, as far as Mr. Bronowitz goes, once the public defender tells him, hey, we've won your appeal, you're going to be released after it goes through a process with Judge Macken, is he going to ask for some rehearing? Is he going to file a petition for allowance of appeal to the Supreme Court? Of course not. And just to conclude, I'd like to direct the Court's attention to a case I cited in my brief from the Fourth Circuit, Wilson v. Johnson, 535 F. 3rd, 262, 2008. And it cites a Supreme Court case, Spencer v. Kemme, 523 U.S. 1, 1998, in which five of the justices in concurring and dissenting opinions conclude that, and the summa case involved, as did the Fourth Circuit case, a prisoner who had been released and then filed a 1983 suit. And the question was, well, what about a habeas corpus action? And the Supreme Court case, in that case, Justice Scalia and the majority agreed that he couldn't maintain the habeas action after he was released because now he was released. And a concurrence, plus Justice Stevenson dissent, five justices said, you know, we ought to relax the heck requirement of favorable termination and allow 1983 suits in this instance because there's no other way for the plaintiff to get into a federal forum to try and assert his rights. So I would say that the case was favorably terminated for Mr. Bronowitz, and to the extent that the Superior Court's decision is somewhat amorphous because of the way the briefing was done, that a favorable termination requirement is entitled to some relaxation. And at this point I... Mr. Ozziani, on your last point, you might want to think about how you're going to overcome Gillies versus Davis, a decision from our court that said that we're not going to recount the votes from the Supreme Court to get to a holding. That's an issue that we've already decided, contrary to what you've articulated here. And we'll have you back on rebuttal. All right. Thank you, Your Honor. We'll call Ms. Scott. Ms. Scott, you may proceed. Thank you, Your Honor. May it please the court, I am Virginia Spencer Scott, and I represent Allegheny County and the individual defendants in their personal capacities.  And my co-appellee, Caroline Leibenguth, who will be arguing after me, is representing the individual defendants in their official capacities. I will start out by addressing the issue that was just presented to the court regarding Heck versus Humphrey. And if Judge Fisher had not brought it up himself, I would have started with discussing Gillies versus Davis. And in that instance, this court directly declined to adopt the argument that Mr. Bonowitz's counsel has just made. And in fact, reading from this court's- Why don't you accept, since you've got relatively limited time, that we're not inclined to recount votes, and we're going to be looking at the Heck termination rule. And the assertion that's being made to us by your opposing counsel is, I satisfy that rule here, because under your own precedent, Third Circuit, the rule is that, and I think the reliance is upon Costler, but we have this language from Costler, a prior criminal case must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the favorable termination element. That's a quote. Now, we've got a case where the Commonwealth has come into Superior Court and confessed error, said this man was wrongly imprisoned, said it as clearly as it can possibly be said, and the Superior Court says, okay, let him go, in effect. How is that not, by our language, an indication of the innocence of the accused, satisfying the favorable termination element? Respectfully, Your Honor, if you look at the brief that was submitted by the DA, and we see it at the appendix at page 332, the- I have looked at it. With respect, let me read to you. Quote, appellant's current probation violation sentence is illegal, unquote. Yes, and so what the DA said was not that this man was innocent. What the DA asserted was that the man needed to be resentenced, that the current sentence should be vacated and resentencing should occur, and that is exactly what the Superior Court did. I'm sorry? Quote me the language, Ms. Scott, where the DA says he's not innocent, he just needs to be resentenced, because when I read it, I read several facts are immediately apparent from consideration, this chronology, and then there's a whole series of facts where the DA says it couldn't have been probation on this, it couldn't have been a probation violation on that, it couldn't have been a probation violation on this other thing. There was nothing to hang the hat on, is what it seems to be saying, nothing. Respectfully, at page 332 of the appendix, the DA says that there is a pending DUI, and that is still a valid sentence, under which a sentence could be imposed, and it says by the time of your honorable court's review, appellant will have served the statutory maximum, and there is a footnote. So the DA stated that the time that was left on the maximum sentence for the DUI was, and I have to go from my memory, was I believe it was going to be December of 2011, and because of the timing, that the brief was being filed November of 2011, that the district attorney believed that the time that the court was going to make a ruling on it, the maximum sentence would be served. The DA added the caveat in footnote 4 that we all know that if someone has another criminal sentence, that someone would be in jail for another matter, that that would end up staying the running of your current probation, and so the district attorney said that the case should be remanded for the trial judge to calculate and determine if that happened to exist here. I thought the DA said, quote, if some of the time, the only caveat would be if some of the time was actually attributed to another offense. There was no assertion that there was another offense. There was only the statement that he's in there, within one month, he's going to, to the extent that you could pin this on the DUI, it's over, and that's that. I mean, doesn't this case, following up on Judge Jordan's retort, doesn't this case really turn on the question of the procedures that were used in the January 19, 2011, proceeding? And that's what this claim is about. And the question for Heck v. Humphrey is, if that proceeding was illegal, which the DA concedes in front of the Superior Court, in which the Superior Court vacated, isn't that enough to constitute a favorable termination for Heck v. Humphrey in this case? Respectfully, no. There are only four things that are allowed under Heck v. Humphrey, and the only one that could possibly have applicability here would be the third listed one, which is that the sentence is declared invalid by a state tribunal authorized to make such decisions. The state tribunal is not the district attorney. No, but didn't the Superior Court do that? The Superior Court did not. And why not? If you look at the beginning of the opinion, the court says that they recognize that Mr. Bonowitz is raising two challenges on appeal, one of which is the legality of his sentence, which is the issue that Heck would require. And the court specifically says, quote, we need not address those challenges at this time. So the Superior Court makes no decision whatsoever as to the validity of the length. But don't you have to look at why the Superior Court says that? I believe you do. And isn't the reason why they said that the DA's concession? I think that they said that because the DA conceded that the sentencing that had happened had improprieties in it and new sentencing had to be done, which is what the order from the Superior Court says. So they vacated the improper sentence and they simply, at page 336, remanded to the trial court a new hearing. What else could they have done? What else could Mr. Bonowitz have done? He won. So to get a, quote, favorable termination, is it your position that he had to appeal or ask for reconsideration of the Superior Court ruling in his favor? There are many things that Mr. Bonowitz could have done during this entire time. If you want to go back to November 2011, when he claims to have been- Let me answer my question. What could he have done given the favorable ruling he got from the Superior Court? What do you think he should have done that would have taken it the step he needed to take to get a, quote, favorable termination, unquote? I do not believe that he got a favorable termination at the Superior Court because all the court did was remand it. And it went back to the trial judge. And when the trial court issues- You're not listening. Yeah. You're not listening to my question. Stop talking for a second. My question is, you say that's not a favorable termination. What else do you think he could or should have done in order to get a ruling from the Superior Court to address the issue you're saying the Superior Court didn't address? He could have had it addressed at the trial court when he had it remanded. And the- I guess I can answer the question, but that's all right. Well, I'm trying to do the best I can, Your Honor. I apologize if I'm frustrating the court. I think that the issue in Heck v. Humphrey is, in a sense, not so much does the plaintiff do everything they can, and if they can't, then they get a pass. Heck v. Humphrey is the law. No, Heck v. Humphrey isn't the law, Ms. Scott, but Heck v. Humphrey has a rule for a reason, and we've said what that reason is. We said in Costler that the reason is, quote, the purpose is to avoid the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution in contravention of a strong judicial policy against the creation of two conflicting resolutions, close quote. Now, there's no possibility of a, quote, conflict, conflicting resolutions here because the DA has said it's- he should never have been sentenced in this fashion. He should never have been sentenced in this way. It's illegal. So if the purpose of the rule is satisfied, why should we not accept that it's satisfied? Respectfully, I do not believe the purpose of the rule has been satisfied because when he was resentenced, it was to parole. So there was a new sentencing hearing back in front of Judge Mackin. Parole based on what? Parole based on what? What could he have been paroled from? He was paroled from the DUI. He had been convicted of the DUI. It was over. Is your position that there was some basis, there was some basis for any sentence at all based on the DUI? Is the Commonwealth really taking the position that there was some lawful legal sentence that could still be imposed on him at the time Judge Mackin made that order? Well, he had, according to the district attorney, had reached the end of the maximum sentence that he was entitled to. But they had the caveat in there that it needed to be returned to the trial court for review as to Mr. Bonowitz's other criminal matters to determine if that would have stayed things. And we do not know. You've already told us that the only criminal matter outstanding was the DUI. You've already maxed out. What possible basis for parole could there have been when it went back in, I guess, May of 2012? The only basis under this conviction would have been the DUI. However, Mr. Bonowitz had other difficulties with the law on a different matter, at least one different matter. He had been arrested, convicted, and had been put into jail, and that's part of the record. But that wasn't the basis for the parole. That's part of the problem here, right? There was no basis for the parole. Go ahead. Please answer that. Well, this brings in the principle that I mentioned earlier, which is that when someone is on probation and they get picked up or they're arrested on a different charge and they're put in jail, they do not continue to get to accrue the time that they're on probation while they're in jail on another offense. And so there is a question that the district attorney recognized that needed to go back to Judge Mackin to do a review as to whether that occurred here. What do you have in this record that indicates to us that that was any more than a, oh, by the way, maybe this could happen, and that, in fact, it did happen? You've got one footnote on a possibly this is it thing, and it sounds like you're hanging your argument on that at this point. What in the record are you relying on to show, no, it really wasn't told because he really was in jail for another reason, therefore saying parole made sense? What are you pointing to in the record? I don't have that. I know that he had another arrest and that he had another conviction outside of the one that was the subject. Ms. Scott, let me ask you this. The 18 to 36 month incarceration, which was the sentence which was handed down on January 19, 2011, okay, which is the subject of the Superior Court case, wasn't that for resisting arrest? Wasn't that on the resisting arrest count? It appears that this judge did, I would say yes. Okay. It appears that way. You would say yes. It takes me back to my prior question. The issue before us for Heck v. Comfrey is what happened on January 19, 2011, and whether the proceedings were illegal. And if we find as the Superior based on what happened that the proceedings were illegal, isn't this DUI, whether it exists or didn't exist, isn't it totally irrelevant to the Heck v. Comfrey question? No, Your Honor. I would say because it appears that the trial court in handling this did things in a very unusual way. I don't think there's any doubt about that. I'm sorry. I just said there's an understatement, but go ahead, please. Right. But the fact that if the trial judge does this wrong and makes a mistake in the sentencing, doesn't end up that there's been a vindication. And I will add one more thing on this. How is it not a vindication? If he was illegally sentenced for resisting arrest and he shouldn't have been sentenced for resisting arrest and the Superior Court agrees based on the DA's concession, how isn't that a vindication? Because under Pennsylvania law for the criminal matter, there are two separate components at issue here. One is the revocation of the probation, and that is a separate appealable act. And then there is a resentencing pursuant to the previous revocation. That is another separate act. And if you look at the Pennsylvania statute 42 PACS section 9771 subpart B, that Mr. Bronowitz does not have a successful determination on both the revocation and the resentencing. And those are both required under Heck. I'm not sure that I agree with that statement. I'm sure I just say to you, and we'll get to your co-counsel, I'll leave it with I'm not sure I agree with that statement. Understood. Well, I can see I'm out of time. One last thing I would add. If the Court's ready for me to conclude, I will add that in addition to the defendants presenting the Heck versus Humphrey argument, we also presented the merits argument that there was qualified immunity, that there was no basis to establish that there was a pattern, a custom and monotop violation as to Allegheny County, and that with regard to the individual capacity suit against Mr. McCaffrey, that no allegations are raised that established a cause of action against him. Those are raised in a brief. The Court never reached those below, and is the record satisfactory for us to be able to reach those here? Yes. Those issues here? Yes. And I will say that. We'll ask your opposition about that on rebuttal. Sure. Okay. But he did not file a brief. Yes, he filed a brief. He didn't file a reply brief. Yes, Your Honor, I agree. Okay. We'll hear from your co-counsel. Yes. You may proceed. Thank you, Your Honor. My name is Caroline Lee-Vincus, and I represent Karen Hollis, Jeffrey Seema, and Thomas McCaffrey in their case. There are a few points that I'd like to make in response to Mr. Asiani's argument with respect to the 11th Amendment immunity. First of all, he argues that we need to have this case remanded for additional discovery. That argument, Your Honors, has no merit because the immunity applies to this case and to these individuals as a matter of law. Judge Hardiman in Haybarger specifically reaffirmed this court's holding in Venn versus First Judicial District of Pennsylvania and held that all probation departments within the Commonwealth are part of the unified judicial system. Why doesn't everybody seem to know that? Even in this case, Allegheny County defended this under the Municipal Tort Claims Act. Well, Your Honor, I think in this case, Allegheny County initially only represented the individuals individually, not in their official capacities. Frankly, this case didn't come to our attention until Mr. Asiani filed the Second Amendment complaint where he added Judge Mackin as a defendant. That's when the case was referred to us and we looked at the complaint and noticed that the probation officers had been sued in their official capacity as well. And that's when we entered an appearance on behalf of the judge and on behalf of the probation officers and the director of the probation department. I know the court's hesitant to take over the responsibility of county probation officers. But I would think, and if you look at Barr v. Clarion, it might clarify things for the officers if you alerted them that they were entitled to claim Eleventh Amendment immunity for their officers if they're sued in their official capacity. Well, Your Honor, I did look at Barr v. Clarion County because Mr. Asiani raised that below. And in that case, Eleventh Amendment immunity was not applicable because if you look at how they were sued, the two probation officers were only sued in their individual capacities. They were not sued officially. The probation department was not sued and the court was not sued. So Eleventh Amendment immunity did not apply in that case. Can you speak to the assertions made by Mr. Asiani that he's adequately pleaded a cause of action against the county and against Director McCaffrey in his official capacity? We've just heard from your co-counsel, Ms. Scott, about saying that those are inadequately pleaded. Do you want to speak to that? I'm sorry, Your Honor. I'm only prepared to speak about the immunity issue because Judge Fisher, the district judge for Lowell, not only dismissed the case against all defendants based on the doctrine of Head v. Humphrey, but she specifically addressed the immunity issue and dismissed all the official capacity claims based on Eleventh Amendment immunity. If we were to disagree on any of those points, is it your position that we would need to send the case back for further fact-finding of some kind? Not the case if it relates to my clients in their official capacity. And that's because as a matter of law, based on Haybarger and Ben, it's over, right? Yes, Your Honor. There's no dispute that these people that have been sued are two probation officers and the director of the probation department. When individuals are sued in their official capacity, you're in essence suing the office where they work. So in this case, Mr. Brunowitz is suing not these individuals, but he's suing the probation department. And it's been established as a matter of law by this court on several occasions, the last one being Haybarger, that probation departments are part of the unified judicial system and they are entitled to Eleventh Amendment immunity. Okay. All right. Ms. Leidenbuth, thank you. Thank you, Your Honor. Thank you for your position on this matter. And we'll hear back on rebuttal for four minutes. Mr. Osian. Thank you. Thank you, Judge Fischer. You know, Frederick the Great said he who defends everything defends nothing. So I'm going to make things a little easier for this panel and admit that the first incarceration that ended in July of 2010 is probably something that cannot be preserved on this case. Also, this Eleventh Amendment situation, which the citizenry can't and will never understand, with official capacity and individual capacity, Ms. Leidenbuth is obviously strong on the official capacity. One thing I would point out, however, and of course I think the case would continue on the individual capacity aspect of it, but one thing I would like to point out about Ben and Haybarger is they were both employment discrimination cases in which Ben was sued directly. The defendant in that case was the Philadelphia Court of Common Pleas, the first judicial district. That's who he sued. He was a probation officer. He didn't sue the probation department. He sued the court. In Haybarger, the woman in that case brought an FMLA and an ADA case against the Lawrence County Probation Department, and then it was decided on the Rehabilitation Act issue because of the federal funds involved. In this case, I'd like you to return to the favorable termination heck issue and to respond specifically to counsel who stated that when the case went back from the Superior Court to the trial court, that there was, number one, still something outstanding so that when the trial court said that Mr. Bronowitz was paroled, there was actually still something that that parole could have applied to. If there was nothing, then obviously that enhances your argument that favorable termination should apply. Let's hear your response to that. Yes, Judge Greenway. My response to that would be to refer to page 329 through 333 of the Commonwealth's brief. That's in the appendix where they went through every one of these charges. Now, with respect to the DUI charge, on page 331, they point out that according to the probation officer's notes, the judge had closed interest in the DUI count on July 20, 2010. That's also confirmed on page 300 where the January 19th order of probation violation has everything terminated except resisting arrest, which was incorrect because that had been concluded in 2006. And the statement about, well, he's going to get out anyway in December 2011, that wasn't a statement that the Commonwealth made. If you read the brief closely, they start that sentence by saying counsel indicates. He's referring to the public defender. And he's referring to the public defender's final fallback argument that if the DUI wasn't over in 2006 because the original sentence was over the maximum, if it wasn't over in 2010 in July because Judge Mack had closed interest on that when he sentenced him to time served, and then went on to say, well, I'm going to continue parole under count four, terroristic threats, which had also already expired, the public defender made the argument that, well, under any calculation of statutory maximum, he's going to get out and it should be out by December 2011 anyway. That's a concession to her fallback argument. It's not what the Commonwealth is saying. The Commonwealth is saying that on January 19, 2011, no sentence could be imposed under the resisting arrest charge because that penalty had been made final back in 2001. Two, there was no probation imposed on count five, assuming a felon had been released in 2007 and served three years probation. That probation would have expired on June 2, 2010. And then he says, according to the probation officer's notes, the judge had closed interest in the DUI on July 20. And one thing that hasn't been addressed here is the fact that probation officer Olis refused to permit the defendant Bronowitz to appear before Judge Mack on January 19. She went up and represented falsely that he had agreed to a plea bargain. We know that fact. In your opening argument, you asked us to employ a relaxation of the favorable termination rule. I presume that when you made that statement, that was when you were still hoping to resurrect the claim as to the first incarceration in 2010, but now you're conceding that that's off the table? Yes, yes, Your Honor. I think I have to do that. The important issue in this case is what happened on January 19, 2011. And in terms of the favorable termination, I mean, we've been over that. I think it satisfies Gillies. What the case law out there throughout the country is, and this includes the Supreme Court, is that we don't need a complete mirror image on favorable termination. The thing is, is there any logic by which we can show that a civil verdict or civil judgment in favor of this criminal defendant is not inconsistent with, in some way, the criminal conviction, then it's allowed to go forward. And in this case, as the Court has pointed out, the Commonwealth has said that all of these probationary periods expired certainly by June of 2010, yet we have a probation purportedly extended on July 20 for something other than the DUI. And how the DUI gets tied into the January 2011 sentence is unknown to me, because in that case, in that matter, Judge Mack has said you're going to get 18 to 36 months for resisting arrest. Okay, Mr. Osborne. That was in 2001. We understand your position. Thank you, Your Honor. Thank you. And all counsel, we thank them for their arguments, and we will take the matter under advisement. Good day. You all have a good day. Thank you.